OPINION
{¶ 1} Appellant, Jameel L. Banks, appeals from a judgment entry of the Ashtabula County Court of Common Pleas, convicting him on one count of aggravated robbery; one count of theft; and three counts of kidnapping. For the reasons that follow, we affirm.
 {¶ 2} On March 21, 2004, the Ashtabula County Grand Jury indicted appellant on one count of aggravated robbery, a first degree felony in violation of R.C. 2911.01(A)(1); one count of theft, a fifth degree felony in violation of R.C. 2913.02(A)(4); and three counts of kidnapping, each a second degree felony in violation of R.C. 2905.01(A)(2). Each count included a firearm specification.
 {¶ 3} Appellant entered a plea of not guilty at his arraignment. The court scheduled appellant for a joint trial with his co-defendant, Kecia Green. Appellant filed a motion for a separate trial, and supplemental motion for a separate trial, which were denied by the trial court.
 {¶ 4} This matter proceeded to a joint trial before a jury on August 12, 2003. The facts revealed that, on the evening of December 22, 2001, an Aldi's supermarket in Ashtabula County, Ohio, was robbed. Three store employees, who were present during the robbery, testified to relevant factual events.
 {¶ 5} At approximately 7:00 p.m., on December 22, 2001, an Aldi's employee closed the store to any incoming customers, while the remaining customers finished shopping. A few minutes later, the employee proceeded to the store's restrooms for a final clean up. Upon entering one of the restrooms, the employee was confronted by a man wearing a ski mask and holding a gun. The perpetrator demanded that the employee bring him to the store's office. The employee complied. Once in the office, the perpetrator opened the employee's cash register till, which was empty.
 {¶ 6} Meanwhile, a co-worker "buzzed" the employee, which signaled the employee to proceed to the front of the store and ring out the final customers. The perpetrator instructed the employee to page the store's assistant manager. The employee obeyed the perpetrator's order.
 {¶ 7} The assistant manager and co-worker, who were the only other employee's at the store, responded to the page. When the assistant manager and co-worker opened the office door, they were confronted by the perpetrator as he pointed a gun at both of them. He bound the feet and hands of the assistant manager and co-worker with duct tape, but then cut loose the binds to allow them to open their register tills. After taking money from the register tills, the perpetrator commanded the assistant manager to open the store's safe. When the assistant manager informed the perpetrator that she was unable to open the safe, he threatened her with the gun. The assistant manager again explained that she could not open the safe because she did not have the proper key. The perpetrator then used a cell phone to place a call and fled the store.
 {¶ 8} All three store employees testified that throughout the robbery appellant was communicating to an individual outside the store via cell phone. The testimony established that the perpetrator was speaking with a female who was providing him with information that assisted with the robbery. The employees testified that the perpetrator was a black male and identified appellant's voice as that of the perpetrator. Also, the assistant manager testified that the perpetrator stole approximately $2,300.
 {¶ 9} Testimony established that appellant fled the store around 8:00 p.m. In particular, the testimony demonstrated that the perpetrator was spotted at approximately 8:00 p.m., moving quickly on foot near a Kentucky Fried Chicken which was just west of the Aldi's store. The witness stated that the perpetrator was clutching a white bag or pillow case.
 {¶ 10} Back at the store, the employees informed Ashtabula County Police Officers that they did not know who owned a Cadillac left at the store's parking lot. The car's license plates were traced to an individual from Cuyahoga County and were registered to a different vehicle. After securing a search warrant, the police found two license plates in the Cadillac's trunk. When the police traced these license plates, the results established that the Cadillac belonged to appellant.
 {¶ 11} During the joint trial, the prosecution presented evidence of various items found in appellant's Cadillac. First, the prosecution presented evidence of a used roll of silver-colored "Frost King" brand duct tape and remnants of silver-colored "Duck" brand duct tape, both of which were retrieved from appellant's Cadillac. Also retrieved from appellant's car were cell phone bills and cell phone numbers of his co-defendant, Kecia Green. DNA testing of cigarette butts found inside appellant's Cadillac was consistent with his co-defendant's DNA.
 {¶ 12} The Ashtabula Police conducted a dog-track of the area near the store. During the track, the dog discovered a white bag to the west of the store in a small wooded-lot. The bag contained two separate ski masks, a pair of black leather gloves, money in the amount of $2,388, and a roll of duct tape. Underneath the bag was a nine-millimeter pistol.
 {¶ 13} The police performed a DNA analysis of a hair found in one of the ski masks from the white bag. The DNA analysis was consistent with appellant's DNA.
 {¶ 14} Finally, the prosecution provided evidence of appellant's cell phone use on the night of the robbery. The cell phone company's records established that appellant's cell phone was used to place calls to the co-defendant's cell phone, and receive calls from the co-defendant's cell phone, forty-eight times between the hours of 6:55 p.m. and 10:55 p.m.
 {¶ 15} Following the joint trial, the jury found appellant guilty on all charges. Accordingly, the court entered judgment convicting appellant on one count of aggravated robbery, one count of theft, and three counts of kidnapping, with a firearm specification included on each count.
 {¶ 16} The trial court then held a sentencing hearing. Following the hearing, the court sentenced appellant to an eight-year prison term on the aggravated robbery conviction and merged the aggravated robbery conviction with the theft conviction for sentencing purposes. The court sentenced appellant to three-year prison terms on each of the kidnapping convictions, with the terms to run concurrently to each other, and consecutive to the eight-year prison term. The trial court ordered that all concurrent sentences were to run consecutively to a three-year prison term on the firearm specifications. Finally, the court stated that appellant's aggregate fourteen-year prison term was to be served consecutive to a federal prison-term appellant was already serving at the time of his sentence.
 {¶ 17} From this judgment, appellant has filed a timely notice of appeal and now sets forth the following three assignments of error for our consideration:
 {¶ 18} "[1.] The trial court erred by sentencing appellant to serve consecutive, rather than concurrent, sentences.
 {¶ 19} "[2.] The trial court erred when it denied appellant's motion to have separate trials between appellant and the co-defendant.
 {¶ 20} "[3.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 21} For purposes of clarity, we will discuss appellant's assignments of error out of order. Under his second assignment of error, appellant contends that the trial court erred by denying his motion for a separate trial. Specifically, appellant maintains that evidence presented during the joint trial, which pertained only to his co-defendant, was severely prejudicial to his defense.
 {¶ 22} "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons." State v. Thomas (1980),61 Ohio St.2d 223, 225. For example, "joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Id.
 {¶ 23} Nevertheless, a defendant may move for severance of the defendants under Crim. R. 14, to wit:
 {¶ 24} "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * the court shall * * * grant a severance of defendants[.]"
 {¶ 25} To demonstrate that the trial court erred by failing to sever the defendants, appellant must demonstrate the following:
 {¶ 26} "* * * (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." State v. Schaim, 65 Ohio St.3d 51, 59,1992-Ohio-31.
 {¶ 27} Appellant argues that the jury was unable to distinguish prejudicial evidence relating to his co-defendant's role in the robbery from his alleged connection to the robbery. He concludes that the jury's convictions were based solely upon the evidence pertaining to his co-defendant, thereby demonstrating prejudice which required severance of defendants.
 {¶ 28} A jury is presumed capable of segregating proof as to multiple charges or defendants when the evidence as to each is uncomplicated. See, e.g., State v. Pietrangelo, 11th Dist. No. 2003-L-0125,2005-Ohio-1686, at ¶ 30. Here, the evidence was uncomplicated and distinct. In short, the prosecution presented substantial evidence which established that the co-defendant used a cell phone to contact appellant throughout the robbery and provided him with assistance in committing the offense. This evidence was easy to understand, and the jury could clearly delineate the actions of the co-defendant and the actions of appellant.
 {¶ 29} Also, as will be discussed under our analysis of the third assignment of error, the prosecution presented abundant evidence which related only to appellant and linked him to the offenses. Thus, the trial court did not abuse its discretion by denying appellant's motion for a separate trial, as he failed to prove prejudice requiring a severance of defendant's. Appellant's second assignment of error is without merit.
 {¶ 30} Under his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. In doing so, appellant contends that the jury relied upon unreliable evidence relating to the dog-tracking evidence, the hair DNA analysis, the store employee's voice identification, and the cell phone records. Based upon this allegedly unreliable evidence, appellant concludes that the prosecution failed to offer any concrete evidence that placed him at the scene of the robbery.
 {¶ 31} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 32} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 33} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 34} In the instant case, the prosecution presented ample competent and credible evidence that, if believed by the jury, would establish appellant's commission of the charged offenses. First, appellant's Cadillac was found abandoned in the Aldi's parking lot on the night of the robbery. Inside the Cadillac was evidence linking appellant to the crime. Namely, the remnants of duct tape were associated to the duct tape used to bind the hands and feet of the store employees. A DNA analysis of the cigarette butts established the co-defendant's presence in appellant's Cadillac. Also, the co-defendant and appellant were linked via the cell phone numbers found in the car.
 {¶ 35} More importantly, the evidence found in the white bag was connected to appellant. The contents of the bag were linked to the robbery as there was money in the amount of $2,388, which was the approximate amount the assistant manager testified was stolen, the duct tape that was used to bind the feet and hands of the employees, and the ski mask. The ski mask inside the bag contained a hair sample adequate for a DNA analysis. The hair's DNA was matched to appellant.
 {¶ 36} Finally, the cell phone records established that appellant and the co-defendant communicated multiple times via cell phone during the robbery. This corroborated evidence establishing that the co-defendant was assisting appellant by acting as a look-out from outside the store and contacting him by cell phone.
 {¶ 37} Although appellant attempts to challenge the credibility of various aspects of the evidence presented by the prosecution, he fails to demonstrate the evidence was unbelievable or absurd. He also failed to present any exculpatory evidence. To the contrary, the jury was provided with an abundance of evidence which established appellant's presence at the crime scene and his commission of the offenses. We will defer to the jury's factual findings and weighing of the evidence. Accordingly, appellant's convictions were not against the manifest weight of the evidence, and his third assignment of error is without merit.
 {¶ 38} Appellant's first assignment of error argues that the trial court erred in sentencing him to consecutive prison terms on the underlying convictions and ordering that his sentence in the instant matter was to run consecutive to a federal prison-term he was already serving. He contends that the court failed to support these consecutive prison terms with clear and convincing evidence.
 {¶ 39} A reviewing court will not reverse a sentence unless the appellant establishes that the trial court failed to comply with the applicable statutory requirements or that it abused its discretion by failing to consider sentencing factors. State v. Rupert, 11th Dist. No. 2001-L-169, 2002-Ohio-7268, at ¶ 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 40} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 41} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting that particular sentence.
 {¶ 42} In the past, this court has held that the findings mandated by R.C. 2929.19(B)(2)(c) and 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Recently, however, the Ohio Supreme Court held that when ordering a defendant to serve consecutive sentences, the trial court must also make its statutorily required findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, paragraphs one and two of the syllabus.
 {¶ 43} The court sentenced appellant to serve consecutive prison terms, which resulted in an aggregate prison term of fourteen years. In doing so, the court determined at the sentencing hearing and within its sentencing entry that consecutive prison terms should be imposed for the following reasons: (1) consecutive terms are necessary to protect the public and punish the offender; (2) consecutive terms are not disproportionate to the conduct of appellant; and (3) consecutive terms are necessary because the harm caused by the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct.
 {¶ 44} Furthermore, during the sentencing hearing and within its sentencing entry, the court supported its imposition of consecutive prison terms based upon appellant's criminal history. Specifically, the court noted that in 1992, appellant was convicted of conspiracy to commit theft and served ninety days in jail and six months on probation. The court further noted that after appellant was indicted in the instant case, and prior to trial, appellant robbed a bank by gun point. Ultimately, he was convicted in federal court and was serving a federal prison-term when the trial court sentenced him on the underlying charges. Accordingly, the court properly provided its reasons and findings for consecutive prison terms on the underlying convictions at the sentencing hearing and within its sentencing entry. This portion of appellant's first assignment of error is not well-taken.
 {¶ 45} Appellant further argues the court failed to support the portion of its sentence ordering his prison term for the underlying convictions were to be served consecutively to the federal prison-term appellant was already serving.
 {¶ 46} Under R.C. 2929.41(B)(2):
 {¶ 47} "If a court of this state imposes a prison term upon the offender for the commission of a felony and a court of another state or the United States also has imposed a prison term upon the offender for the commission of a felony, the court of this state may order that the offender serve the prison term it imposes consecutively to any prison term imposed upon the offender by the court of another state or the United States."
 {¶ 48} R.C. 2929.41(B)(2) provides the trial court with the authority to order that its sentence be served consecutively to an already existing federal sentence.
 {¶ 49} Again, the court was required to provide its findings and reasons supporting the imposition of a consecutive sentence during the sentencing hearing and as part of its judgment entry. As stated previously, the court satisfied these requirements when sentencing appellant to consecutive prison terms on the underlying convictions. The court further noted that these same findings and reasons applied to its consecutive sentence to the federal prison term. The court was not required to repeat the identical findings and reasons for a consecutive sentence, as its original pronouncements were satisfactory. Thus, this portion of appellant's first assignment of error is also not well-taken.
 {¶ 50} Appellant's first assignment of error is without merit.
 {¶ 51} Based upon the foregoing analysis, appellant's three assignments of error are without merit. We hereby affirm appellant's convictions and sentence.
O'Neill, J., Rice, J., concur.