OPINION
{¶ 1} Appellant, Jerome Johnson, appeals from a jury verdict of the Lake County Court of Common Pleas convicting him on one count of kidnapping, one count of aggravated burglary, one count of rape, one count of attempted rape, and two counts of domestic violence. For the reasons that follow, we affirm in part, reverse in part, and remand.
 {¶ 2} On March 25, 2004, appellant, Deborah Elmore, and Todd Sorrell were smoking crack and drinking beer for some six hours at Elmore's home.[1] As the evening wore on, they ran out of beer at which point appellant and Elmore went to purchase more. The two returned and the group continued "partying." At some point, for unknown reasons, appellant left the residence but later returned hostile and agitated. According to Elmore and Sorrell, appellant entered the apartment and physically attacked Elmore in Sorrell's presence. Testimony established appellant beat Elmore with his fists, removed her pants and underwear, and, after speculating whether Sorrell "wanted some of that," appellant inserted his fingers into Elmore's anal cavity. During the attack, Sorrell fled and subsequently called 911.
 {¶ 3} According to Elmore, appellant dragged her outside the residence and continued his assault. Carolyn Huber, Elmore's neighbor, testified that on March 25, 2004, she was awakened by "screams and yells" coming from Elmore's residence. Huber recognized the male voice as appellant's. Huber, from her upstairs window, warned the individuals to cease the commotion. Several minutes later, Huber heard a knock at her door and found Elmore naked and beaten on her stoop. Huber called the police who arrived and took Elmore to the Painesville Police Department where she completed a report of the incident. At the time, Elmore did not disclose the sexual assault. Appellant was charged with domestic violence.
 {¶ 4} Four days later, on March 29, 2004, Elmore located appellant in an attempt to retrieve her cell phone of which he had possession since the March 25, 2004 incident. During their meeting, appellant asked if he could return with Elmore to her home and have a beer with her. Elmore agreed on the condition appellant "didn't start nothing." The two returned to Elmore's residence and began drinking and smoking crack with another individual, Terrell Wright. Ultimately, appellant became angry and left the residence. Elmore went to sleep in her bedroom and Wright fell asleep on the loveseat.
 {¶ 5} Later in the night, Wright was awakened by persistent pounding on the door. Elmore testified she also woke up when she heard "banging" on her apartment door and appellant shouting "bitch, let me in." Appellant gained entry by kicking the door and proceeded to Elmore's bedroom where he began to beat her. Wright testified he observed appellant strike Elmore several times at which point he fled to Huber's home and told her to call the police.
 {¶ 6} Meanwhile, appellant had pulled Elmore from her bed by her hair and continued his physical attack. Once on the floor, appellant removed Elmore's pants and underwear and inserted his fingers into her anal cavity. Appellant then abruptly left the room, returned with a "spice bottle," and attempted to insert this implement into Elmore's anal cavity.
 {¶ 7} Police arrived and observed appellant standing over a bleeding Elmore. The officers immediately noticed Elmore's underwear, the spice bottle, and various puddles of blood as well as some fecal matter on the floor. Paramedics responded and Elmore disclosed the entire event, including the sexual assault. After arriving at the hospital, Elmore was treated by Dr. David Sugerman. According to Dr. Sugerman, Elmore complained of injuries to the head and anus. An "alleged sexual assault" examination was completed which showed various abrasions to the anal sphincter, but no "disruptions" or "fissures." Dr. Sugerman testified his findings were not inconsistent with Elmore's rendition of events. While at the hospital Elmore provided the police with her statement.
 {¶ 8} On May 18, 2004, appellant was indicted for the incidents occurring on March 25, 2004 and those occurring on March 29, 2004. The indictment charged appellant with two counts of domestic violence, fourth degree felonies in violation of R.C.2919.25; two counts of kidnapping, first degree felonies in violation of R.C. 2905.01; two counts of rape, first-degree felonies in violation of R.C. 2907.02; one count of aggravated burglary, a first degree felony in violation of R.C. 2911.11; one count of felonious assault, a second degree felony in violation of R.C. 2903.11; and one count of attempted rape, a second degree felony in violation of R.C. 2923.02. Appellant pleaded not guilty to all charges.
 {¶ 9} On September 17, 2004, appellant filed a motion to sever the offenses which allegedly occurred on March 25, 2004 from those which allegedly occurred on March 29, 2004. On the same date, appellant also moved the court for an in camera review of the grand jury transcripts. Both motions were denied on October 4, 2004. On October 18, 2004, the case proceeded to trial. During voir dire, appellant's counsel challenged several jurors for cause; those who the court determined impartial and unbiased were removed by peremptory strike.
 {¶ 10} After the state's case-in-chief, appellant moved the court, pursuant to Crim.R. 29, for an acquittal on all charges. The motion was denied. Appellant renewed the same motion after the defense rested. The motion was again denied. On October 20, 2004, appellant was found guilty on two counts of domestic violence, one count of kidnapping, one count of aggravated burglary, one count of rape, and attempted rape. Appellant was accordingly acquitted on one count of kidnapping, one count of rape, and felonious assault.
 {¶ 11} On November 24, 2004, appellant was sentenced to one year in prison for each of the domestic violence convictions, nine years in prison for the aggravated burglary conviction, nine years in prison for the rape conviction, and seven years in prison for the attempted rape conviction. All sentences were ordered to run consecutively for an aggregate sentence of 27 years. Appellant was also adjudicated a sexual predator. Appellant now appeals asserting eight assignments of error.
 {¶ 12} Appellant's first assignment of error reads:
 {¶ 13} "The trial court abused its discretion when it failed to remove two prospective jurors for cause, thus depriving the defendant-appellant of his right to a fair and impartial jury as guaranteed by the Sixth and Fourteenth amendments to the United States Constitution and Section 1, Article 10 of the Ohio Constitution."
 {¶ 14} Appellant's first assignment of error challenges the trial court's denial of his request to excuse prospective jurors Sillanpa and Richmond for cause. Appellant argues these prospective jurors exhibited a fundamental bias towards him during voir dire and their subsequent statements that they were nevertheless capable of adjudicating appellant's case impartially did not cure their biases.
 {¶ 15} Appellant's argument is significantly peculiar because Mr. Sillanpa and Mr. Richmond were only prospective jurors. Neither was chosen to ultimately serve on the panel which heard appellant's case. Although the trial court disagreed with appellant's argument that these prospective jurors should be dismissed due to their alleged biases, appellant utilized two peremptory challenges to remove them from the actual panel.
 {¶ 16} In Ross v. Oklahoma (1988), 487 U.S. 81, the United States Supreme Court rejected the contention that the loss of a peremptory challenge constituted a violation of the constitutional right to an impartial jury. The court stated:
 {¶ 17} "We have long recognized that peremptory challenges are not of constitutional dimension. * * * They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean theSixth Amendment was violated." Id., at 88. (Citations omitted).
 {¶ 18} Consequently, "any claim that the jury was not impartial is not focused on the juror excused by the exercise of the peremptory challenge, but rather is focused on the jurors who ultimately sat." State v. Broom (1988), 40 Ohio St.3d 277, 288. As the prospective jurors identified by appellant did not sit on the jury panel which decided his case, we conclude no violation of his right to an impartial jury occurred.
 {¶ 19} Further, simply because appellant did not possess the full complement of peremptory challenges afforded under Ohio law at the end of voir dire does not mean his rights were violated. The concept of a peremptory challenge is a creature of statute and is not required by the constitution. Ross, supra, at 89, citing Gray v. Mississippi (1987), 481 U.S. 648; Swain v.Alabama (1965), 380 U.S. 202, 219. Accordingly, the General Assembly must determine the number of peremptory challenges allowed in a criminal trial and define their purpose and manner of their exercise.[2] Frazier v. United States, (1948),335 U.S. 497, 505, n. 11. Where such a statute exists, the "right" to use the peremptory challenge is denied only where a party does not receive that which state law provides. Here, appellant was able to exercise his right to remove the jurors about whom he was concerned. Therefore, he experienced no denial or impairment of his statutory rights.
 {¶ 20} Appellant's first assignment of error is overruled.
 {¶ 21} Appellant's second assignment of error asserts:
 {¶ 22} "The trial court erred when it denied defendant-appellant's motion for severance of offenses for trial, in violation of his rights to due process of law under theFourteenth Amendment of the U.S. Constitution and Sections 10 and16, Article I of the Ohio Constitution."
 {¶ 23} Crim.R. 14 allows the trial court, upon motion, to sever multiple charges in an indictment to prevent the jury from hearing confusing evidence which would be otherwise inadmissible absent joinder. State v. Jones (Sept. 20, 1993), 12th Dist. No. CA92-12-117, 1993 Ohio App. LEXIS 4469, at 6. The rule provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * * the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires." Crim.R. 14.
 {¶ 24} When an appellant alleges prejudicial misjoinder, a court must determine whether evidence of other crimes would be admissible even if the counts were severed and, if not, whether the evidence of the other crimes is simple and distinct. Statev. Schaim (1992), 65 Ohio St.3d 51, 59. The law, however, favors joining multiple offenses in interest of conserving judicial resources, alleviating witness' inconvenience, and curbing the possibility of incongruous results in separate trials. Id., citing State v. Torres (1981), 66 Ohio St.2d 340, 343.
 {¶ 25} The trial court is granted broad discretion in determining whether a defendant shall have separate trials.State v. Banks, 11th Dist. No. 2003-A-0118, 2005-Ohio-5286, at ¶ 26. Unless the discretion has been exercised to the manifest injury of the defendant, there is no error. State v. Durham
(1976), 49 Ohio App.2d 231, 233.
 {¶ 26} Here, appellant contends the trial court abused its discretion when it overruled his motion to sever the offenses allegedly occurring on March 25, 2004 from those allegedly occurring on March 29, 2004. Specifically, appellant argues the evidence of each crime is not simple and distinct as the crimes involved similar scenarios with the same victim and the employment of similar means to accomplish the charged crimes. Further, appellant maintains the evidence of each respective crime would not be reciprocally admissible in separate trials as it would involve impermissible "other acts" evidence. See, Evid.R. 404(B). It bears noting that the law presumes a jury is capable of segregating proof as to multiple charges when the evidence as to each is uncomplicated. State v. Pietrangelo,
11th Dist. No. 2003-L-125, 2005-Ohio-1686, at ¶ 30; see, also,Banks, supra, at ¶ 28. Furthermore:
 {¶ 27} "[p]rejudice arises when there is a danger in a complex case [that] the evidence cannot be easily segregated by the jury or where there is clear evidence the defendant is guilty of one offense and the evidence might be used by the jury to convict [the] defendant of another offense where there is little evidence of guilt." State v. Shiflet (Dec. 17, 1987), 8th Dist. Nos. 48383 48384, 1987 Ohio App. LEXIS 10090, 23.
 {¶ 28} In the cause at bar, the crimes with which appellant was charged were similar and involved the same victim. However, we believe appellant suffered no prejudice from their joinder as the evidence of each crime was sufficiently uncomplicated and distinct. The crimes were committed four days apart in the presence of or in the immediate vicinity of separate witnesses who testified to their observations of the separate events. Furthermore, the jury's verdict indicates it fully appreciated the differential character of the evidence used to prove the separate incidences; that is, appellant was acquitted of the kidnapping and rape charges allegedly occurring on March 25, 2004, while he was convicted of the same for those occurring on March 29, 2004. The evidence was easy to understand and the jury could clearly differentiate the evidence of each separate crime notwithstanding their similarity.
 {¶ 29} As we believe the evidence of each separate crime was simple and distinct, we need not address the "other acts" prong of appellant's argument. The trial court did not abuse its discretion in denying appellant's motion to sever and appellant's second assignment of error is therefore overruled.
 {¶ 30} Appellant's third assignment of error states:
 {¶ 31} "The trial court erred when it denied the defendant-appellant's request for an in-camera inspection of the grand jury transcripts, in violation of his rights to due process of law under the Fourteenth Amendment of the U.S. Constitution and Sections 10 and 16, Article I of the Ohio Constitution."
 {¶ 32} Appellant contends he had a reasonable belief there were "significant inconsistencies" between the victim's statement to police on March 25, 2004 and her testimony at both the preliminary hearing and grand jury proceedings. At the preliminary hearing, appellant was only charged with domestic violence for the March 25, 2004 incident. Later, appellant was indicted for domestic violence as well as kidnapping and rape for the March 25, 2004 incident. Appellant notes the victim did not inform the police of the sexual assault occurring on March 25, 2004 and did not testify at the preliminary hearing that she was sexually assaulted on that date. In appellant's view, the victim's grand jury testimony must have differed from her earlier statements and testimony. Thus, for purposes of impeachment, appellant asserts an inspection of the grand jury transcripts was necessary.
 {¶ 33} Grand jury proceedings are secret and a defendant has no right to inspect grand jury transcripts either before or during trial unless the "ends of justice require it and there is a showing by the defense that a particularized need for the disclosure exists which outweighs the need for secrecy." Statev. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus. The disclosure of grand jury testimony is a question of fact and rests within the sound discretion of the trial court.State v. Griffiths (Dec. 28, 2001), 11th Dist. No. 2000-T-0131, 2001 Ohio App. LEXIS 6003, 4.
 {¶ 34} Here, there was not a particular need for appellant to inspect the grand jury transcripts. First, Elmore testified at the preliminary hearing that appellant forcibly dragged her outside of the residence. Further, Sergeant Eric Miller took Elmore's statement on March 25, 2004 at the police station. Elmore's statement reflects appellant grabbed her by the hair and dragged her from the apartment. Both Elmore's testimony and her statement are consistent and set forth evidence from which the kidnapping charge could issue.
 {¶ 35} Moreover, although Elmore did not discuss the sexual assault at the preliminary hearing, any alleged inconsistencies regarding the sexual assault could be demonstrated by alternative available means. In her statement, she explicitly stated appellant inserted his fingers into her anal cavity. Accordingly, Elmore's March 25, 2004 statement suffices to show the inconsistency in question. Appellant had access to police reports and the preliminary hearing transcripts at the time of trial and was able to point out the inconsistencies in the victim's statements.
 {¶ 36} Finally, even if appellant had set forth a cognizable "particularized need" for the transcripts, he suffered no prejudice from the court's denial. Appellant was acquitted of the rape and kidnapping charges which allegedly occurred on March 25, 2004 and thus his argument is fundamentally moot. The trial court did not abuse its discretion when it determined the defense could not conduct an in camera review of the grand jury transcripts. Appellant's third assignment of error lacks merit.
 {¶ 37} Appellant's fourth assignment of error states:
 {¶ 38} "The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."
 {¶ 39} A trial court shall grant a motion for acquittal when there is insufficient evidence to support a conviction. Crim.R. 29(A). When determining whether the trial court properly denied the motion for acquittal, an appellate court reviews the evidence admitted at trial to determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 40} After his trial, the jury returned a verdict of guilty on two counts of domestic violence, one count of aggravated burglary, one count of kidnapping, one count of rape, and one count of attempted rape. Appellant now challenges the sufficiency of the evidence as it relates to his convictions for aggravated burglary, kidnapping, rape, and attempted rape.
 {¶ 41} Aggravated burglary is defined by R.C. 2911.11(A)(1), which provides, in relevant part:
 {¶ 42} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 {¶ 43} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;"
 {¶ 44} The state put forth evidence that, on March 29, 2004, appellant forcibly entered Elmore's residence while she and another occupant, Terrell Wright, were sleeping. After gaining entry, Mr. Wright testified appellant proceeded into Elmore's bedroom and began striking her. Elmore testified appellant entered her bedroom, grabbed her hair and beat her.
 {¶ 45} The above evidence notwithstanding, appellant contends he cannot be considered a "trespasser" because he had been invited over to "party" earlier in the evening and had been a resident of the apartment prior to March 25, 2004. We disagree. There was no evidence indicating Elmore gave appellant carte blanche to enter the apartment whenever he wished. Moreover, appellant's status as a "former" resident suggests he would need Elmore's "current" permission to be on the premises legally. When viewed in a light most favorable to the prosecution, we believe there was sufficient evidence to support appellant's conviction for aggravated burglary.
 {¶ 46} R.C. 2905.01 defines the crime of kidnapping and provides, in relevant part:
 {¶ 47} "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 48} "* * *
 {¶ 49} "(4) to engage in sexual activity, as defined in [R.C.] 2907.01 * * *, with the victim against the victim's will;"
 {¶ 50} According to R.C. 2907.01(C), "`[s]exual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(A) provides in pertinent part:
 {¶ 51} "(A) `Sexual conduct' means * * * without privilege to do so, the insertion, however slight, of any part of the body * * *, or other object into the * * * anal cavity of another. * * *"
 {¶ 52} Here, the state put forth evidence that appellant, subsequent to forcibly entering Elmore's residence on March 29, 2004, grabbed her hair and pulled her from her bed. After beating her, Elmore testified appellant then inserted his fingers into her anal cavity. Dr. David Sugerman, the emergency room physician who examined Elmore on March 29, 2004, testified he performed an "alleged sexual assault kit." Dr. Sugerman testified the kit showed abrasions to Elmore's anal sphincter. Under the circumstances, such evidence is sufficient to prove each element of R.C. 2905.01(A)(4) beyond a reasonable doubt.
 {¶ 53} Appellant was also convicted of rape under R.C.2907.02(A)(2), which provides:
 {¶ 54} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 55} The state presented evidence showing, on March 29, 2004, appellant threw Elmore onto the floor, ripped her pants and undergarments from her, and inserted his fingers into her anal cavity. Such evidence, when viewed in a light most favorable to the prosecution, is adequate to sustain a conviction for rape under R.C. 2907.02(A)(2).
 {¶ 56} Finally, the jury convicted appellant of attempted rape pursuant to R.C. 2907.02(A)(2) and R.C. 2923.02. To prove this charge, the state was required to demonstrate appellant "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of [rape], shall engage in conduct that, if successful, would constitute the [rape]." R.C. 2923.02(A).
 {¶ 57} The state set forth evidence that, on March 29, 2004, appellant, after inserting his fingers into Elmore's anal cavity, exited the bedroom and returned with a spice bottle. Appellant then tried to insert the bottle into Elmore's anal cavity. Although Elmore testified appellant was unable to insert the bottle, we believe such evidence is sufficient to meet each element of attempted rape.
 {¶ 58} For the above reasons, the trial court did not err in overruling appellant's Crim.R. 29 motions. The convictions at issue are supported by sufficient evidence and therefore appellant's fourth assignment of error is overruled.
 {¶ 59} Appellant's fifth assignment of error states:
 {¶ 60} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 61} When reviewing a claim that the verdict is against the manifest weight of the evidence, an appellate court examines the entire record, weighs both the evidence and all reasonable inferences, considers witness' credibility, and determines whether in resolving conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that a new trial is necessary. State v. Thompkins (1997), 78 Ohio St.3d 380,387.
 {¶ 62} However, the power to grant a new trial should be exercised only in those exceptional cases in which the evidence weighs heavily against the conviction. Banks, supra, at ¶ 32, citing, State v. Martin (1983), 20 Ohio App.3d 172, 175. Witness credibility rests solely with the finder of fact and an appellate court is not permitted to simply substitute its judgment for that of the jury. State v. Awan (1986),22 Ohio St.3d 120, 123. As such, the role of the reviewing court is to engage in a limited weighing of the evidence submitted at trial in interest of determining the state properly carried its burden of persuasion. Thompkins, supra, at 390. "[I]f the [e]vidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict.Banks, supra, at ¶ 33.
 {¶ 63} Under his fifth assignment of error, appellant challenges the credibility of Elmore's testimony. Specifically, appellant notes Elmore testified she cannot remember "things" when she is drunk. Further, on March 29, 2004, the victim stated she had been drinking and smoking crack. The defense also introduced testimony that Elmore had lied when she testified at the preliminary hearing that she did not smoke crack on the night in question. In effect, appellant argues the sum of Elmore's testimony about the alleged rape and attempted rape was not credible.
 {¶ 64} Appellant correctly notes that Elmore admitted to drinking and smoking crack on March 29, 2004. Moreover, the defense established that the victim lied at the preliminary hearing when she testified she had not smoked crack on the evening in question. However, a reasonable jury could find, based upon the evidence as a whole, that Elmore's testimony was nevertheless credible under the circumstances.
 {¶ 65} First, Patrolman Nicholas Sholtz, one of the officers responding to the scene on March 29, 2004, heard Elmore yelling "help me" and "get him off of me" as he approached the victim's residence. The victim testified:
 {¶ 66} "Jerome * * * grabbed my pants and ripped them off me. He grabbed by legs and put them up in the air. They were together. He was holding them with his arm. He . . . then he took his fingers and shoved them inside my butt. He kept saying all kinds of names like bitch, whore, and kept telling me I was a fucking bitch and a fucking whore. He kept sticking his fingers in my butt, pushing them in and pulling them out lots of times.I was screaming for someone to help me. I was screaming for himto stop." (Emphasis added).
 {¶ 67} When Sholtz and Patrolwoman Brenda Dibble entered the home they found Elmore upset and crying. Dibble testified the victim crawled toward her screaming "get him away." The officers each testified they observed blood and fecal matter on the floor along with the victim's torn, soiled underwear, and a spice bottle nearby. Such evidence corroborates Elmore's rendition of events.
 {¶ 68} Further, although Elmore had been drinking and smoking crack, Lieutenant Robert Mrosko, the fireman/paramedic who responded to Elmore's home testified, she was "alert and oriented times three:"
 {¶ 69} "Alert and oriented times three would be to person, place and time. So if I ask someone a question on who they are, if they answer with their name appropriately without any delay or pauses, I try to find out if they know where they're at, which is the place. I mean, she knew where she was at, that it was her apartment. And the time would be, you know, what day it was or the time of the week. And also, place could even be within the city of Painesville. Just that she is not that confused that she doesn't even know where she's at."
 {¶ 70} After the victim was placed in the ambulance, Lt. Mrosko testified:
 {¶ 71} "At that point she became more emotionally upset, and that's when she told me that she was sexually assaulted; and she just said that he shoved stuff up there. I'm sorry. She told me that her anus burned. Those were her exact words. And then she said that he shoved stuff up there."
 {¶ 72} Finally, Dr. Sugerman, the attending emergency room physician on March 29, 2004, testified Elmore complained of injuries to her head and anus. Dr. Sugerman conducted an examination revealing abrasions to Elmore's anal sphyncter. Although Dr. Sugerman could not identify the specific cause of the abrasions, he testified such injuries are not inconsistent with Elmore's version of the assault.
 {¶ 73} Finally, although Elmore admitted to lying during the preliminary hearing regarding her crack use on the night(s) in question, she testified at trial she did so because she was "ashamed" and feared the ramifications of such an admission.
 {¶ 74} Elmore's credibility was clearly an issue the prosecution had to overcome. However, after receiving the testimony, the jury chose to believe her version of the facts. We cannot say it clearly lost its way in doing so. When observed as a whole, we believe the prosecution put forth ample, credible evidence that, if believed by the jury, would establish appellant's guilt on the offenses in question. Appellant's fifth assignment of error is overruled.
 {¶ 75} Appellant's sixth assignment of error asserts:
 {¶ 76} "The trial court ruled contrary to law when it ordered consecutive sentences."
 {¶ 77} Appellant's seventh assignment of error states:
 {¶ 78} "The trial court erred when it sentenced the defendant-appellant to consecutive sentences based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury."
 {¶ 79} Under his sixth and seventh assigned error, appellant challenges the trial court's imposition of consecutive sentences.
 {¶ 80} As Ohio's felony sentencing scheme existed at the time of appellant's sentencing, a trial court could only impose consecutive sentences if it found certain factors set forth in R.C. 2929.14(E)(4) and 2929.41(A).
 {¶ 81} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held 2929.14(E)(4) and 2929.41(A) unconstitutional and severed them from Ohio law. Id. at paragraphs one, two, three and four of the syllabus.
 {¶ 82} In the instant case, the trial court found that factors set forth in R.C. 2929.14(E)(4) supported the imposition of consecutive sentences. Thus, appellant's sentences are unconstitutional under Foster.
 {¶ 83} Appellant's six and seventh assignments of error have merit.
 {¶ 84} Appellant's eighth and final assignment of error reads:
 {¶ 85} "The trial court committed reversible error when it labeled the defendant-appellant a sexual predator against the manifest weight of the evidence."
 {¶ 86} A "sexual predator" is defined as:
 {¶ 87} "* * * [A] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E)(1).
 {¶ 88} R.C. 2950.09(B)(4) requires clear and convincing evidence in the record before a trial court can adjudicate a defendant a sexual predator. The trial court is also required to consider the factors under R.C. 2950.09(B)(3)(a) through (j) to determine whether a defendant is likely to commit another sexually-oriented offense in the future. State v. Reed, 10th Dist. No. 02AP-694, 2003-Ohio-2412, at ¶ 52.
 {¶ 89} Appellant was convicted of both rape and attempted rape for his actions on March 29, 2004. Thus, appellant meets the first prong of the definition of a sexual predator. With respect to appellant's likelihood of recidivism, the court stated at the sexual offender classification hearing:
 {¶ 90} "The Court has considered the record, including the record of the defendant's conduct as evidenced in the trial. I have considered Dr. Fabian's report. I have considered the arguments of counsel. The Court finds that under the factors set forth in 2950.09, that there are several that stand out quite clearly and convincingly; that the defendant has what Dr. Fabian characterizes as antisocial personality traits; that he has demonstrated a pattern of abuse and has displayed cruelty. The Court heard the testimony about how the defendant humiliated the victim in this case, how he forcibly digitally penetrated her, left her there and then went back to attempt to do it again with a large bottle * * *. However, the police stopped the second attempted rape from actually becoming a first-degree felony rape. The Court further finds that the Static 99 rating, which indicates a medium to high risk of sexual recidivism due to having an unrelated victim, personality disorder, prior criminal record, single marital status and substance abuse issues — Along the lines of the substance abuse, the defendant's prior record I would consider an extreme record for substance abuse, including many charges of crack cocaine. The Court also has balanced against that the factors lowering his risks, including no prior sex offense charges or convictions, no stranger or male victims, and no sexual deviance disorder. But, based upon the evidence before this Court, the Court finds clear and convincing evidence that the defendant will likely recidivate and, accordingly, the Court finds that the defendant should properly be labeled a sexual predator."
 {¶ 91} The trial court considered the relevant factors provided in R.C. 2950.09(a) through (j), the pre-sentence investigation report, and Dr. Fabian's report. As we find no errors in the court's recitation, we believe the evidence clearly and convincingly supports the trial court's conclusion. Appellant's final assignment of error is overruled.
 {¶ 92} For the foregoing reasons, appellant's first, second, third, fourth, fifth, and eighth assignments of error are without merit. Appellant's six and seventh assignments of error have merit. Therefore, the judgment of the Lake County Common Pleas Court is affirmed in part and reversed in part, and this matter is remanded for resentencing in accordance with the mandates ofFoster.
Grendell, J., concurs, O'Toole, J., concurs in part; dissents in part with a Concurring/Dissenting Opinion.
[1] Testimony revealed that prior to March 25, 2004, appellant had lived with Elmore for several months and the parties were in a romantic relationship together.
[2] Pursuant to R.C. 2945.21(A)(1) and Crim.R. 24(C), a party to a felony case may peremptorily challenge four jurors.