[Cite as *State v. Williams*, 2012-Ohio-1043.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 96752

---

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## JAMES L. WILLIAMS

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; VACATED IN PART; REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544610

**BEFORE:** Rocco, J., Stewart, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

**ATTORNEY FOR APPELLANT**

John B. Gibbons
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Marc D. Bullard
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant James L. Williams appeals from his convictions for aggravated burglary, aggravated robbery, and kidnapping, all with firearm specifications, notices of prior conviction ("NPCs"), and repeat violent offender specifications ("RVOs"), and for having a weapon while under disability ("HWUD").[1]

{¶2} Williams presents three assignments of error. He first claims that his convictions are against the manifest weight of the evidence. He also claims that the trial court abused its discretion when it refused to allow him to introduce alibi evidence and when it permitted a witness during redirect examination to read his written statement he provided to the police.

{¶3} Upon a review of the record, this court cannot find merit to Williams's claims. However, because the record reflects Williams committed only one aggravated burglary, his conviction on Count 2 must be vacated. Consequently, although his other convictions are affirmed, this case is remanded with instructions to that effect.

{¶4} Williams's convictions result from a home invasion that occurred on October 29, 2010. The state's witnesses gave the following description of the incident.

---

[1] For sentencing purposes pursuant to R.C. 2941.25(A) the trial court "merged" Williams's convictions for aggravated burglary and kidnapping into his convictions for aggravated robbery. Williams challenges all of his convictions.

{¶5} Fifteen-year-old Clarence Wilson invited a friend, Desmond Franklin, to his house that afternoon to play video games. The two boys played for a time, then Clarence's mother left the house to do laundry. While his mother was away, Clarence received a telephone call from a neighbor, Shawn Crenshaw. Crenshaw wanted to come over and Clarence agreed.

{¶6} Crenshaw joined the others in playing video games for a time before he volunteered to go to the store to obtain a cigar and snacks. Standing at the doorway, Desmond watched Crenshaw leave; he saw Crenshaw meet with two other young men outside and begin walking with them toward the store.

{¶7} Desmond recognized both of the young men Crenshaw met outside. One was Brazie Norman. Desmond's friend, Dontez Long, had introduced Norman to Desmond the day before. In fact, at that time, Desmond sold a shirt to Norman, and as he walked with Crenshaw, Norman wore that shirt. Clarence also knew the shirt, because he had given it to Desmond.

{¶8} Desmond also knew the other man, appellant Williams, because Long recently had pointed him out, called Williams "Cool James," and told Desmond, "That's my boy." Desmond drew Clarence's attention to the fact that Crenshaw had company. Clarence looked outside to see Crenshaw and his companions before he closed the door.

{¶9} A short time later, Crenshaw returned to Clarence's home. As Crenshaw entered, Clarence instructed him to close the door. Crenshaw told Clarence to "hold on,

[his] shoe [was] untied," and bent down. Suddenly, the two men with whom Desmond and Clarence had seen Crenshaw walking to the store burst in behind him. Although their faces were partially covered, both Desmond and Clarence recognized the intruders from their clothing.

{¶10} Norman brandished a gun and ordered the boys not to move as Williams went upstairs. Clarence attempted to grab the gun, but Norman struck him in the face with it; the boys made no further resistance.

{¶11} When Williams returned to the living room, Norman handed him the gun. Williams "tucked it away," then "grabbed the flat screen" TV while Norman picked up Clarence's "Droid phone." Norman also appropriated the "XBox 360" the boys had been using to play their games, and then he and Williams left with the items.

{¶12} After the two intruders were gone, Clarence got word to his mother about the incident and called the police. When Clarence's mother arrived, Desmond informed her he knew who the intruders were. Clarence's mother provided to the responding officers the names Desmond gave her, directed the officers to Crenshaw's house, and, further, told the detective assigned to the case that Desmond's friend Long knew Williams's real name.

{¶13} Williams subsequently was indicted in this case on seven counts. In Counts 1 and 2, he was charged with aggravated burglary, in Counts 2 and 3, he was charged with aggravated robbery, in Counts 5 and 6, he was charged with kidnapping, and in Count 7,

he was charged with HWUD. The first six counts also contained firearm specifications, NPCs, and RVOs.

{¶14} Williams's case proceeded to a jury trial on Counts 1 through 6; Williams executed a jury waiver with respect to Count 7. After considering the evidence, the jury convicted Williams on all counts. The trial court thereafter found Williams guilty on Count 7.[2]

{¶15} At sentencing, the trial court merged Counts 1, 2, 5, and 6 into Counts 3 and 4. The court then imposed a three-year sentence for the firearm specifications to be served prior to and consecutive with consecutive terms of five years on each of Counts 3 and 4, for a total of 13 years.

{¶16} Williams presents the following assignments of error in this appeal.

**"I. The jury verdicts returned against James L. Williams for the multiple offenses of aggravated robbery, aggravated burglary, [and] kidnapping, and the trial court's guilty verdict of having a weapon while under a disability charge were all contrary to the manifest weight of the evidence.**

**"II. The trial court erred and denied the Defendant-Appellant, James L. Williams, his right to due process of law, as guaranteed by the United States and**

---

[2]Although the state's "Exhibit 1," which demonstrated Williams had been convicted of robbery in a previous case, is not included in the record on appeal, the record reflects Williams stipulated to the fact of his prior conviction.

**Ohio Constitutions, by prohibiting him from presenting an alibi defense and by prohibiting the presentation of witnesses in support of his alibi defense.**

**"III.   The trial court erred and denied the Defendant-Appellant his right to due process of law by permitting on redirect examination the witness Desmond Franklin to read for the jury, word for word, the written investigative statement that he had previously provided to the police officers."**

{¶17} In his first assignment of error, Williams argues that none of his convictions is supported by the manifest weight of the evidence.   He asserts that the state's witnesses provided "uncertain" and unreliable testimony.   This court disagrees.   Nonetheless, on the facts of this case, Williams's conviction on Count 2 constitutes plain error and, therefore, must be vacated.

{¶18} In reviewing a challenge to the manifest weight of the evidence,

> [t]he question to be answered is whether there is substantial evidence upon which [the trier-of-fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt.   In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [triers-of-fact] clearly lost [their] way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.)   *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.   Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the

fact-finder to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶19}** The record in this case does not support a conclusion that either the jury or the trial court lost its way in finding Williams guilty of committing aggravated burglary, aggravated robbery, kidnapping, and HWUD. Clarence and Desmond provided a clear and coherent description of the incident. The other witnesses corroborated their testimony.

**{¶20}** Desmond recognized both Williams and Norman, and although initially reluctant to assist police in their investigation, he explained his reasons for his reluctance. Long admitted he introduced Desmond to Norman, that he knew Williams, Norman, and Crenshaw all took part in the incident, and that he had even been present when those three planned it. Both Clarence and Desmond stated Norman handed the gun to Williams before the two of them left Clarence's house.

**{¶21}** In short, Williams's convictions are supported by the manifest weight of the evidence. *State v. Smith*, 8th Dist. No. 95541, 2011-Ohio-3581, ¶ 53-55. Williams's first assignment of error is overruled.

**{¶22}** Williams does not raise any challenge to his multiple convictions for aggravated burglary. However, because only one residence was invaded, this court finds plain error with respect to Williams's conviction on Count 2. *State v. Lynott,* 8th Dist. No. 89079, 2007-Ohio-5849, ¶ 27.

R.C. 2911.01(A), which defines aggravated burglary, raises the degree of the criminal conduct if certain factors attend the offender's entry. However, it does not contain an additional penalty for each person affected by the conduct. See, e.g., *State v. Johnson*, [11th Dist. No. 2004-L-215, 2006-Ohio-4540]; see also, *State v. Allen*, Cuyahoga App. No. 82618, 2003-Ohio-6908, citing *State v. Harrison* (Dec. 9, 1999), Cuyahoga App. No. 75294 [1999 WL 1129587].

*Lynott*, ¶ 29.

{¶23} Because Williams's sentence on Count 2 was one of the ones the trial court ordered merged into his sentence on Count 3, Williams's total sentence remains unaffected by the foregoing. Only the final journal entry in this case, therefore, needs correction.

{¶24} Williams argues in his second assignment of error that the trial court abused its discretion when it denied his motion for leave to file an untimely notice of alibi. He contends the trial court's action was unreasonable and prevented him from presenting an adequate defense to the charges against him. The record does not support his argument.

{¶25} The record demonstrates defense counsel asked for leave to file a notice of alibi on the scheduled date of trial. The state objected to the introduction of the alibi as being both untimely raised and a prejudicial surprise.

{¶26} Crim.R. 12.1 requires a defendant to file and serve notice of the alibi seven days before trial, "unless the court determines that in the interest of justice such evidence should *be admitted*." (Emphasis added.) Thus, the rule bars evidence filed in contravention of it, but "grants the trial court the discretion to waive that [seven day] requirement and to admit unfiled alibi testimony if it is in the 'interest of justice' to do so."

*State v. Pitts*, 8th Dist. No. 72304, 1998 WL 166152 (Apr. 9, 1998), quoting *State v. Smith*, 50 Ohio St.2d 51, 53, 362 N.E.2d 988 (1977).

**{¶27}** If the evidence is offered within seven days before trial, the court may allow the evidence in "[i]f the alibi testimony does not surprise or otherwise prejudice the prosecution's case[,] * * * if the defense operated in good faith when it failed to give proper notice of an alibi defense[,]" and if the admission of the evidence is necessary to ensure the defendant a fair trial. *Smith* at 53.

**{¶28}** In this case, the trial court noted that the matter had been set for trial "on March the 8th, March the 11th, March the 21st and then * * * April 11th." On that date, defense counsel notified the prosecutor that he wanted to present an alibi defense.

**{¶29}** The record reflects that on April 12, 2011, Williams's counsel filed the defense witness list containing the names of the proposed three alibi witnesses, taking advantage of the fact that the case had been "on standby status from Monday [April 11] to Wednesday [April 13]." Defense counsel explained his delay in presenting an alibi by stating he had been contacted by one of Williams's family members on April 6, 2011 and informed there was "a potential alibi." After interviewing the witnesses over the weekend, he learned they were willing to testify.

**{¶30}** The prosecutor objected on the basis that he had been provided with all the information on April 12, 2011, in spite of the fact the case had been set for trial on April

11. The prosecutor told the court that he had not had the opportunity to investigate Williams's sudden claim of alibi.

**{¶31}** According to Williams's proffer of the evidence his witnesses would have provided, Williams had been at "his mother's home" with some friends when the home invasion was alleged to have occurred. Testimony to this effect "would have been backed up by a photograph from a cell phone camera that one of the potential alibi witnesses had taken."

**{¶32}** Under the circumstances presented in this case, this court cannot find the trial court abused its discretion in denying Williams's motion. *State v. Tucker*, 8th Dist. No. 80221, 2002-Ohio-4902, ¶ 15. The prosecution's case would have been prejudiced in the face of this lately-alleged alibi, it is impossible to believe Williams had not thought of informing his defense attorney well before the date of trial that he had an alibi, and, in light of the evidence of Williams's guilt, the alibi testimony was not "necessary to ensure the defendant a fair trial." *Id.*

**{¶33}** Accordingly, Williams's second assignment of error also is overruled.

**{¶34}** In his third assignment of error, Williams argues that the trial court erred in permitting Desmond on redirect examination to read to the jury the written statement he provided to the police. Williams asserts this testimony

constituted hearsay. As authority for his argument, Williams cites *State v. Moore*, 8th

Dist. No. 94277, 2011-Ohio-449. *Moore*, however, is inapplicable to the facts of this

case.

**{¶35}** Evid.R. 801 provides in relevant part as follows:

> (**D) Statements which are not hearsay.** A statement is not hearsay if:

> (1) ***Prior statement by witness.*** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

**{¶36}** In addition, Evid.R. 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it.

**{¶37}** It is axiomatic that a trial court's evidentiary rulings are reversible only if they

constitute an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343

(1987). In this case, Williams's defense attorney referred to Desmond's written statement

during cross-examination. Counsel's questions were designed to imply that Desmond was

not being truthful during his direct examination when he stated he never met Williams,

because when the police

interviewed him soon after the incident, he indicated he had. Desmond also testified

Norman was like a brother to him, but failed to choose Norman's photo from the original

array the detective showed him. On redirect examination, the trial court permitted Desmond, in fairness, to read his written statement in order to explain and to place in context the portions on which defense counsel had focused.

{¶38} In contrast, *Moore* presented a situation in which a police officer was improperly permitted to read an out-of-court witness statement he obtained during his investigation. Here, Desmond read his own statement after Williams had used portions of it on cross-examination to challenge Desmond's credibility with respect to both his acquaintance with Williams and his observations at the time of the incident. *See, e.g., State v. Davis*, 4 Ohio App.3d 199, 447 N.E.2d 139 (9th Dist.1982). No abuse of discretion occurred under these circumstances.

{¶39} Accordingly, Williams's third assignment of error is overruled.

{¶40} Consistent with the foregoing opinion, Williams's convictions on Count 1 and Counts 3 through 7 are affirmed. His conviction on Count 2 is vacated, and this case is remanded to the trial court with instructions to correct

the journal entry to reflect that disposition; Williams's sentence remains unaffected.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court with instructions.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
LARRY A. JONES, J., CONCUR