JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Leroy W. Lynch, challenges various rulings made by the trial court as well as the jury's verdict and the subsequent sentence imposed by the trial court. After reviewing all of the arguments of the parties and the applicable law, we affirm appellant's conviction, but vacate the sentence and remand for resentencing.
 {¶ 2} On October 9, 2003, the Cuyahoga County Grand Jury indicted Lynch and a co-defendant, Marcus Hemphill ("Hemphill"), on two counts of aggravated murder with mass murder and felony murder specifications, in violation of R.C. 2903.01; two counts of felonious assault, in violation of R.C. 2903.11; and aggravated robbery, in violation of R.C. 2911.01. Each of those counts carried a one-year and three-year firearm specification, in violation of R.C. 2941.141 and 2941.145. Lynch was also indicted for tampering with evidence and having a weapon while under disability, in violation of R.C. 2912.12 and 2923.13 respectively.
 {¶ 3} These charges arose out of a fatal shooting that occurred in the early morning of September 31, 2003. The victims in this case, Alvin Scales ("Scales") and Timothy Campbell ("Campbell"), were best friends and roommates. On the night of September 30, 2003, Scales and Campbell drove to the Gentle Persuasions bar in Cleveland, where they remained until their departure around 2:00 a.m. The two men left in Scales' automobile, a 1969 Buick Rivera that he had restored, making the car very unique. They drove to a Marathon gas station located on the corner of Harvard Avenue and East 93rd Street, where the shooting occurred.
 {¶ 4} It was Campbell's testimony that the gas station was deserted except for the cashier inside. Campbell was with the cashier at first, purchasing cigarettes. As he was walking back to Scales' car, Campbell noticed a white pickup truck at a gas pump furthest away from the cashier, although no one was pumping gas. Lynch was in the driver's seat of that truck. As Campbell returned to Scales' car, he saw another man, Hemphill, with his back toward Scales' car. Hemphill then turned and ran to Scales' car brandishing a revolver and demanded, "you got to come up off that," which Campbell took to mean that Hemphill wanted Scales to get out of the car.
 {¶ 5} A struggle ensued between Scales and Hemphill over the gun. Hemphill stepped back and fired three to four shots into the automobile. Campbell was struck by one shot, but it was not fatal, and he was eventually able to recover from that injury. Another shot struck Scales' in his left arm, went through his chest, and pierced his left lung, heart and liver. After the shooting, Hemphill got back into the white pickup truck, and he and Lynch sped off. Scales was badly wounded, but he still attempted to leave the gas station. However, shortly after Scales got the car moving, he passed out due to his injuries, and he died that morning at 3:15 a.m.
 {¶ 6} Prior to trial, the state amended its complaint to delete both the felony murder and mass murder specifications as they related to counts one and two of the indictment. On April 6, 2004, the jury found Lynch guilty of the lesser included offense of murder, in violation of R.C. 2903.02(A)(B); two counts of felonious assault; aggravated robbery, each with the one- and three-year firearm specifications; and tampering with evidence. The trial court also found Lynch guilty of having a weapon while under a disability after he waived his right to a jury trial on that particular charge.
 {¶ 7} The trial court sentenced Lynch to fifteen years to life for the counts of murder (which merged due to operation of law); eight years for both counts of felonious assault (one of the terms consecutive to the murder sentence and the other concurrent); five years for tampering with evidence, consecutive to the other sentences; ten years for the aggravated robbery, consecutive to the other sentences; and twelve months for having a weapon while under a disability, concurrent with the other sentences. The trial court also sentenced Lynch to three consecutive years in prison for the firearm specification, which merged for the purposes of sentencing.
 {¶ 8} Lynch now appeals both the underlying conviction and the sentence imposed, citing six assignments of error for our review.[1]
 I. Insufficient Evidence {¶ 9} A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45,102 S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560. However, a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. State v. Trembly (2000), 137 Ohio App.3d 134,139, citing Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443, U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)" State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph 2 of the syllabus. See, also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 10} Lynch's conviction is primarily based upon the theory of accomplice liability. Lynch contends that he was simply in the wrong place at the wrong time and that the evidence does not support a finding that he "aided and abetted" Hemphill's actions. The evidence presented at trial contradicts that contention.
 {¶ 11} This court notes the importance of any evidence demonstrating the elements of this crime as it pertains to either Lynch or Hemphill because, under the theory of accomplice liability, anyone who is an accomplice to a crime "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).
 {¶ 12} Viewing the evidence in a light most favorable to the prosecution, there is sufficient evidence to support the inference that Lynch and Hemphill conspired to commit a felony car-jacking and that the murder of Scales was a product of that conspired felony. There was also credible evidence presented that there was "bad blood" between Hemphill and Scales.
 {¶ 13} The surviving victim, Campbell, testified that he believed Lynch and Hemphill had followed Campbell and Scales to the gas station. This contention is supported by several pieces of evidence. First, the uniqueness of Scale's automobile makes it valuable to be the target of a car-jacking. Second, when the victims first arrived at the gas station, no one else was there. The victims pulled in, and Scales parked the car right in front by the cashier. The pickup truck driven by Lynch pulled in after the victims, and Lynch parked the truck at the gas pump furthest from the cashier, which was also the pump closest to the road for a potential easy getaway. Also, even though the pickup truck was pulled up to a gas pump, there was no attempt to purchase gas. We find there was sufficient evidence to support the underlying conviction, thus appellant's first assignment of error is without merit.
 II. Trial Court's Denial to Admit Exculpatory Evidence {¶ 14} It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. State v. Heinish (1990), 50 Ohio St.3d 231; State v.Sibert (1994), 98 Ohio App.3d 412.
 {¶ 15} Appellant here challenges the trial court's decisions to exclude an out-of-court statement made by Lynch's co-defendant. "The admission or exclusion of evidence rests within the sound discretion of the trial court." State v. Jacks (1989), 63 Ohio App.3d 200, 207. Therefore, "an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989), 45 Ohio St.3d 104, 107. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court. See, generally,State v. Jenkins (1984), 15 Ohio St.3d 164. Finnerty, supra, at 107-108.
 {¶ 16} An abuse of discretion connotes more than an error in law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. As the Ohio Supreme Court has noted:
 {¶ 17} "An abuse of discretion involves far more than a difference in * * * opinion. The term `discretion' itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment, but the defiance thereof, not the exercise of reason but rather of passion or bias."Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, quoting,State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 18} In reviewing the facts presented before the trial court, this court cannot say that the lower court abused its discretion on this issue. Both Lynch and Hemphill made statements to Detective Denise Kovach upon their arrest. The statement given by Hemphill at that time essentially asserted that he was totally to blame and that Lynch had nothing to do with it. This statement was made out of court and was not subject to any cross-examination. At trial, the defense attempted to introduce this statement by way of cross-examination of Detective Kovach. This court holds that the trial court properly excluded this hearsay evidence from a declarant, Hemphill, who was available to testify.
 {¶ 19} The Ohio Rules of Evidence define hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions enumerated in the rules of evidence. Evid.R. 802. In this assignment of error, Lynch concedes Hemphill's statement is hearsay, but contends that it does fall under one of exceptions pursuant to Evid.R. 804(B)(3), which states in pertinent part:
 {¶ 20} "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 {¶ 21} "* * *
 {¶ 22} "(3) Statement against interest. A statement that * * * at time of its making * * * so far tended to subject a declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 23} The trial court ultimately excluded the introduction of Hemphill's statement ruling that it was hearsay and the declarant was available to testify. Lynch's attorney even stated at trial that: "Mr. Hemphill is on the witness list. He is here. I have talked to him. We are going to make a decision as to whether or not he's going to be called as a witness."
 {¶ 24} Lynch eventually chose not to call Hemphill as a witness during trial. The wisdom of that trial strategy was up to Lynch's attorney and is an issue we will discuss later. However, the trial court correctly held that the decision did not render Hemphill "unavailable," as defined by the evidentiary rules. Therefore this court finds that the trial court did not abuse its discretion in excluding this statement. We also find no substance to appellant's throw-in contention that it is in the interest of justice that we find abuse of discretion on the part of the trial court here. Appellant's second assignment of error is without merit.
 III. Ineffective Assistance of Counsel {¶ 25} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Stricklandv. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; Statev. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. Even debatable tactics do not constitute ineffective assistance of trial counsel, for it is obvious that nothing is seen more clearly than with hindsight. Statev. Clayton (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189. Accordingly to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's error, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, at 141, 142.
 {¶ 26} In the case sub judice, appellant contends that his trial counsel was ineffective for failing to properly introduce Hemphill's statement into evidence. This contention is without merit. The trial court properly ruled that, according to the circumstances of this case, the statement declarant, Hemphill, was available to testify. Thus, the only way for trial counsel to introduce the evidence at that point would be to call Hemphill to testify.
 {¶ 27} The decision to call the co-defendant and actual shooter in this case is a strategic decision a trial attorney should not make lightly. There were definite drawbacks in deciding to call this man to the stand at trial. For one, Hemphill was a drug trafficker with several convictions, all of which could be brought up on cross-examination and then brought to light for the jury's consideration. Also, there were several contradictions between Hemphill's statement and the physical evidence presented at trial. The jury would then have those contradictions to weigh in determining Hemphill's truthfulness. With this in mind, a trial attorney cannot be found to have provided ineffective counsel by deciding it would be best not to have Hemphill testify. Therefore, appellant's third assignment of error is without merit.
 IV. Trial Court Failed to Provide Jury Instructions on a Lesser Included Offense. {¶ 28} In his fourth assignment of error, the appellant contends that the trial court should have instructed the jury on the crime of involuntary manslaughter as a lesser included offense to the aggravated murder charge. While the appellant properly states that involuntary manslaughter is a lesser included offense of the crime of murder, we do not find that the trial court committed reversible error by not instructing the jury on that particular lesser included offense.
 {¶ 29} The trial court should give an instruction on a lesser included offense only when the evidence warrants it. State v. Johnson (1988),36 Ohio St.3d 224, 226. The trial court must charge the jury on a lesser included offense only when the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213 at paragraph two of the syllabus. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense.State v. Shane (1992), 63 Ohio St.3d 630, 632-33. "To require an instruction to be given to the jury every time `some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Id., at 633. It could also be unduly confusing to the jury. Id.
 {¶ 30} After receiving the requests to instruct the jury on the lesser included offenses of both murder and involuntary manslaughter, the court held that the most appropriate lesser included offense to instruct the jury on was murder "B". R.C. 2903.02 defines murder as: "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code * * *." The trial court continued to properly note that the applicable underlying felony for murder "B" was either aggravated robbery and/or felonious assault. Here, Lynch's co-defendant shot Campbell and killed Scales while trying to steal Scales' car.
 {¶ 31} Furthermore, the difference between the crimes of murder and involuntary manslaughter is the element of intent. Murder is defined as the "purposeful" killing of another, while involuntary manslaughter defines intent as "recklessly." The trial court found sufficient evidence that Lynch purposefully caused the victim's death. Thus, the evidence at trial did not support both an acquittal on the murder charge and a conviction on an involuntary manslaughter charge. We find no abuse in the court's ruling here. There was evidence of bad blood between Hemphill and Scales. The evidence further shows that Hemphill took deliberate steps back, regrouped, and then fired three to four shots at his victims. Those are purposeful actions that cannot be deemed to fall to the level of mere recklessness. For all these reasons, appellant's fourth assignment of error is without merit.
 V. The Conviction was Against the Manifest Weight of the Evidence. {¶ 32} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State exrel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 33} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 34} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 35} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 36} Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact.
 {¶ 37} In the case at bar, the evidence demonstrates that it cannot be said that the jury clearly lost its way. There were facts presented demonstrating that Hemphill obtained another's truck in exchange for crack cocaine, and Lynch was present during at least one of these exchanges. Furthermore, Lynch drove the truck as they pulled into the gas station. Lynch kept the getaway vehicle ready for their escape. After witnessing the shooting, Lynch sped off with the shooter as his passenger. As such, appellant's fifth assignment of error is without merit.
 VI. Trial Court Erred By Imposing Maximum Consecutive Sentences. {¶ 38} In appellant's final assignment of error, Lynch challenges the validity his sentence for several reasons. R.C. 2953.08(G)(2), provides that an appellate court may not increase, reduce, or otherwise modify a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. Clear and convincing evidence is more than a mere preponderance of the evidence; it is the evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998),126 Ohio App.3d 485, 710 N.E.2d 783, citing Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. When reviewing the propriety of the sentence imposed, an appellate court shall examine the record, including the oral or written statements at the sentencing hearing and the presentence investigation report. R.C.2953.08(F)(1)-(4).
 {¶ 39} In this assignment of error, the appellant contends that the sentence imposed was deficient in several respects including: (1) improper imposition of the maximum sentences; (2) improper imposition of consecutive sentences; (3) the sentence was disproportional; and (4) the sentence as imposed is unconstitutional in view of the recent United States Supreme Court decision in Blakely v. Washington (2004), 542 U.S. ___, 124 S.Ct. 2531. Ultimately, this court now agrees that the sentence as imposed was deficient as a matter of law.
 {¶ 40} As to appellant's constitutional argument based on Blakely,
that argument holds no merit in light of recent rulings by this court. This argument has been addressed in this court's en banc decision inState v. Lett (May 31, 2005), Cuyahoga App. Nos. 84707 and 84729. InLett, we held that R.C. 2929.14(C) and (E), which govern the imposition of maximum and consecutive sentences, do not implicate the Sixth
Amendment as construed in Blakely. Accordingly, we now reject appellant's constitutional argument in regard to his sentence.
 {¶ 41} As to appellant's arguments that the trial court's imposition of maximum and consecutive sentences do not satisfy statutory requirements, we find deficiency in the lower court's proceedings. In the case of imposing both maximum and consecutive sentences upon a defendant, a trial court must first satisfy several statutory requirements. When a trial court imposes the maximum prison term, it shall state on the record the reasons for imposing the maximum sentence. R.C. 2929.19(B). To impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. See State v.Banks (Nov. 20, 1997), Cuyahoga App. No. 72121; State v. Beasley (June 11, 1998), Cuyahoga App. No. 72853. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. See Id., State v. Assad (June 11, 1998), Cuyahoga App. Nos. 72648, 72649; State v. Boss (Sept. 15, 1997), Clermont App. No. CA96-12-107; State v. Fincher (Oct. 14, 1997), Franklin App. No. 97 APA03-352.
 {¶ 42} Likewise, R.C. 2929.19(B) requires the trial court to explain its reasons for imposing consecutive sentences. When a judge imposes consecutive terms of incarceration, but fails to comply with R.C.2929.14(E)(4), there is reversible error. State v. Beck (March 30, 2000), Cuyahoga App. No. 75193, citing State v. Albert (1997),124 Ohio App.3d 225. Thus, the court must make the requisite findings and state its reasons before a defendant can be properly sentenced to consecutive terms, just as it must before properly imposing the maximum sentence.
 {¶ 43} Upon review of the record, this court finds significant deficiencies in the trial court's sentencing proceedings. While the record does indicate some attempt by the trial court to explain its reasons for imposing maximum and consecutive sentences, the explanations given are generic, vague and unclear. The trial court does not provide for the record satisfactory reasons for the sentence it imposed. It is also unclear from the record of the sentencing hearing what sentence was given for which conviction and why. These deficiency alone would require a remand from this court for resentencing.
 {¶ 44} Furthermore, this court finds reversible plain error in the trial court's sentencing proceedings. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. SeeState v. Tichon, (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16.
 {¶ 45} In State v. Gooden, this court held:
 {¶ 46} "Pursuant to R.C. 2929.19(B)(3), the trial court has a mandatory duty at the sentencing hearing to notify the defendant that he is subject to post-release controls. State v. Bryant, Cuyahoga App. No. 79841, 2002-Ohio-2136; State v. Rashad (Nov. 8, 2001), Cuyahoga App. No. 79051; State v. Wright (Sept. 28, 2000), Cuyahoga App. No. 77748. `At sentencing' means `at the sentencing hearing,' rather than `in the sentencing entry.' State v. Bryant, supra.
 {¶ 47} "A review of the sentencing hearing transcript reveals that the trial court did in fact fail to satisfy the notification requirements of R.C. 2929.19(B)(3). Thus, we * * * remand this case in compliance with R.C. 2929.19(B)(3)." State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864.
 {¶ 48} In the case at bar, a review of the record reveals that the trial court committed the same reversible error in sentencing. The sentencing entry imposes post-release control as part of the appellant's sentence while the trial court made no mention of the imposition of post-release control during the sentencing hearing. This reversible error is plain and obvious and requires that this matter be remanded for resentencing.
 {¶ 49} Due to the reasons set forth above, this court finds no error in the underlying conviction, and it is therefore affirmed. We do find reversible error in the trial court's sentencing proceeding, and thus vacate the sentence of the lower court and remand the matter for resentencing.
 {¶ 50} This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs.
 Gallagher, J., concurs and concurs in judgment only (see separateopinion).
[1] Appellant's six assignments of error are included in Appendix A attached hereto.
 CONCURRING OPINION