[Cite as *State v. Smith*, 2011-Ohio-3581.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95541**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STANLEY SMITH

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-532637

**BEFORE:** Rocco, J., Sweeney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 21, 2011

-i-

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Denise J. Salerno
        Andrew J. Santoli
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1}   Defendant-appellant Stanley Smith appeals from his convictions for aggravated burglary, aggravated robbery, and kidnapping, all with firearm specifications, for theft, and for having a weapon while under disability ("HWD"), and from the sentence imposed for those convictions.

{¶ 2}   Appellant presents six assignments of error.   He argues the lower court erred in failing to either declare a mistrial or order a continuance when, during trial, the prosecution revealed it possessed information not previously disclosed to the defense.   He further argues the trial court

violated his constitutional right to confront witnesses when it permitted certain testimony into evidence. He argues the trial court erred when it denied his motions for acquittal and in imposing sentences on all counts. Finally, he claims his trial counsel rendered ineffective assistance.

{¶ 3} Upon a review of the record, this court cannot find any reversible error occurred. Consequently, appellant's convictions and sentences are affirmed.

{¶ 4} Appellant's convictions result from an incident that occurred during a poker game. The host, Matthew Shultz, called some of his regular players for a game to be held at his Lake Road apartment on the evening of October 26, 2009.

{¶ 5} Six people eventually arrived, viz., Christopher Foertch, Thomas Gross, Charlie Ha, Khai Nguyen, Simon Moujsa, and, lastly, Jonathan Powell. As the evening progressed, Shultz noticed that Powell's behavior seemed unusual. Powell was using his cell phone, "texting" extensively on it rather than playing poker, drinking beers at a fast rate, and "wandering around" the apartment.

{¶ 6} Powell also left the apartment twice. The first time, Shultz thought Powell went to smoke; however, the second time, Powell left his "black and mild cigar" at the table when he left. About thirty minutes later, Shultz heard a knock at his door. Foertch walked over to open it.

**{¶ 7}** When he pulled, Powell "came flying through" and fell to the floor. Two men holding guns stood at the threshold. The first man, later identified as appellant's cousin, Duane Smith, ordered everyone to get on the floor and to stay quiet. All the players obeyed.

**{¶ 8}** Duane demanded that everyone remove their pants and empty their pockets as he and his accomplice, later identified as appellant, each opened a plastic trash bag. Duane then proceeded directly to Shultz, who had fallen backward from his chair.

**{¶ 9}** As the host of the game, Shultz acted as the "bank"; he held all the money the players traded for betting chips. Duane put the gun to Shultz's head and asked him where the money was. Shultz handed it over.

**{¶ 10}** Duane and appellant both collected items from the other players, placing "pants, cell phones and belongings" into the bags. They then herded all the players into the kitchen. When the victims were thus "packed" together, one of the assailants began to spray a burning substance at them. With the victims agitated and confounded by this assault, the assailants made their escape.

**{¶ 11}** The victims waited until they were certain they were alone to act. They found a cell phone misplaced beneath the furniture and called the police. Shultz watched Powell, whose behavior seemed suspicious; Shultz

believed Powell's demeanor during the incident "looked fake." Shultz reported his suspicions to the police.

{¶ 12} The case was assigned to Cleveland police detective Tom Lynch. After speaking with Shultz and some of the other victims, Lynch learned Powell had left the area. Lynch nevertheless investigated Powell's cell phone records; Lynch discovered many of Powell's messages that night were to and from his then-girlfriend, Reba Smith. When Lynch questioned Reba, she provided an oral statement.

{¶ 13} Reba admitted Powell asked her to help him on the night of the incident. She claimed Powell asked her only to drive his truck for him. Reba identified her two cousins, Duane Smith and appellant, as the men who followed Powell into the apartment building and returned ten minutes later with full trash bags. Reba's information led Lynch to show photo arrays to Shultz. Shultz positively identified Duane as one of the assailants.

{¶ 14} After arresting Duane Smith, Lynch interviewed him. Duane also provided an oral statement. Duane indicated Powell planned the robbery, and claimed Reba understood what was occurring. Duane admitted taking part in the incident, but he refused to identify the other man involved with Powell's plan; Duane referred to him only as "the other dude."

{¶ 15} As a result of Lynch's investigation, appellant was charged in this case along with Powell, Duane, and Reba in a twenty-one count indictment.

Appellant was charged on twenty of the counts, as follows: Count 1, aggravated burglary; Counts 2 through 6, aggravated robbery; Counts 7 through 12, kidnapping; Counts 13 through 19, theft; and Count 21, HWD. Counts 1 through 12 each contained both one- and three-year firearm specifications.

{¶ 16} Appellant's case proceeded to a jury trial. The state presented the testimony of three of the victims, Reba, Powell, and Lynch. After the trial court denied his motions for acquittal, appellant presented two witnesses in his defense. Appellant's witnesses asserted he was in their company at the time of the incident.

{¶ 17} The jury ultimately convicted appellant on all of the charges against him. In sentencing appellant, the trial court imposed a prison term that totaled ten years.

{¶ 18} Appellant challenges his convictions and sentence with the following six assignments of error.

"I. Defendant was denied due process of law when the Court failed to grant a mistrial when the prosecutor had failed to provide timely discovery.

"II. Defendant was denied due process [of] law and a fair trial [w]here the Court denied a continuance to defendant where there was a failure to timely disclose potential exculpatory material prior to trial.

"III. Defendant was denied his Sixth Amendment right to confrontation and cross-examination when the Court allowed the

investigating detective to relate a statement by a non-testifying co-defendant.

"IV. Defendant was denied due process of law when the Court overruled his motion for judgment of acquittal.

"V. Defendant was denied effective assistance of counsel.

"VI. Defendant was denied due process of law and subjected to unconstitutional multiple punishments when he was separately sentenced for merged offenses."

{¶ 19} Appellant's first and second assignments of error are related and will be addressed together. In them, appellant argues that he was entitled to either a mistrial or a continuance because the prosecution committed a discovery violation by withholding potentially exculpatory information until his trial was well underway. This argument lacks merit.

{¶ 20} A lower court has discretion in deciding whether to grant either a mistrial or a continuance of trial proceedings. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343; *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078, syllabus. A reviewing court will not reverse the decision unless the trial court abused its discretion. Id. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 21} A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights

of the accused   adversely are affected; this determination primarily is left to the trial court.   *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490.   A mistrial is necessary only when a fair trial no longer is possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused were adversely or materially affected.   *State v. Goerndt*, Cuyahoga App. No. 88892, 2007-Ohio-4067, ¶21.

**{¶ 22}** In considering whether the trial court abused its discretion in denying a continuance, this court considers the options available to the trial court under Crim.R. 16(E)(3).   The rule provides:

**{¶ 23}** "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this [discovery] rule * * * , the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

**{¶ 24}** This court has held that, when the prosecution fails to disclose potentially exculpatory evidence, the trial court must consider the following factors in deciding the appropriate way to ensure the fairness of the proceeding: 1) whether the prosecution's failure to disclose was a willful

violation of Crim.R. 16; 2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense; and, 3) whether the accused is prejudiced by admission of the evidence. *State v. Saucedo*, Cuyahoga App. No. 90327, 2008-Ohio-3544, at ¶25, citing *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689.

{¶ 25} The record reflects that when Lynch investigated Powell's cell phone records, those records revealed Powell communicated with several other numbers on the night of the incident. Most of Powell's outgoing text messages went to Reba. However, according to the provider, one number Powell used belonged to a woman named "M.G."[1] whom Lynch could neither locate nor link to the incident. This number had a "956" prefix.

{¶ 26} Powell sent to the "956" number the following text message at 9:17 p.m.:

{¶ 27} "Its only 8 people here now....So we gonna wait lil bit......"

{¶ 28} Seven minutes later, Powell sent a text message to Reba's cell phone number that read as follows:

{¶ 29} "Ask stew[2] did he get my text[.]"

---

[1]Since this woman was not involved in the incident, this court will refer to her by initials.

[2]Reba and Powell both testified that appellant's nickname was "Stu."

{¶ 30} Just before returning to the front of the building to let the two men into the building, Powell sent a text message to Reba that stated, "Tell them to cum [sic] on .... Remember the [guy] in the red shirt .... He got the money[.]"

{¶ 31} During Powell's direct examination, he testified that the "956" number was appellant's. On cross-examination, armed with the information the prosecutor provided in discovery, i.e., that the "956" number belonged to M.G., the defense used Powell's cell phone records to challenge his credibility. However, at that time, Powell suddenly testified that a different number on his cell phone records belonged to M.G., who was a friend of his.

{¶ 32} The record reflects this testimony surprised the prosecutor and Lynch. After Lynch requested additional information from the cell phone provider, the provider admitted it had made a mistake. The "956" number belonged to a "minute phone" that lacked any "subscriber information"; therefore, no one could determine who had used it. The prosecutor informed defense counsel and the trial court of this development.

{¶ 33} Upon obtaining this new information, and realizing Powell's credibility could not be challenged on the basis of his failure to recognize the "956" number as M.G.'s number, defense counsel requested the trial court to either declare a mistrial or grant a continuance so that he could reconsider his strategic options. The trial court conducted a lengthy hearing out of the

presence of the jury to ascertain both the circumstances surrounding the misunderstanding and its effect on appellant's defense of alibi.

{¶ 34} At the conclusion of this interlude, the trial court denied appellant's request. The court found that the prosecution had neither wilfully committed a discovery violation nor withheld potentially exculpatory information. However, the trial court decided to provide a jury instruction explaining the defense had been asking Powell questions based upon a misunderstanding, and "the fact that [defense counsel] engaged in that line of cross-examination [wa]s not to be held against the defendant or [defense counsel] in any way." The record reflects defense counsel acquiesced in the trial court's resolution of the difficulty. *State v. Greene*, Cuyahoga App. No. 91104, 2009-Ohio-850.

{¶ 35} The record contains no indication that the prosecution's failure to disclose the information was willful. Moreover, this court cannot conclude that appellant was prejudiced. The information, although not exculpatory, did not actually inculpate appellant, did not affect his defense of alibi, and, at any event, the record otherwise contains overwhelming evidence against him. Id.

{¶ 36} For the foregoing reasons, appellant's first and second assignments of error are overruled.

{¶ 37} Appellant argues in his third assignment of error that the trial court violated his constitutional right of confrontation when it permitted Lynch during his direct examination to relate Duane's oral statement. This argument is rejected for three reasons.

{¶ 38} First, the record reflects Duane was available to testify. Indeed, he professed a desire to aid in appellant's defense, but appellant did not want him to. Thus, appellant simply refused to *exercise* his right of confrontation. See, e.g., *State v. Lynch*, Cuyahoga App. No. 84637, 2005-Ohio-3392. He cannot now claim on appeal that the trial court denied him his right.

{¶ 39} Second, Duane's statement neither named nor, in itself, reasonably implicated appellant as one of the participants in the robbery. *In re Watson* (1989), 47 Ohio St.3d 86, 91, 548 N.E.2d 210.

{¶ 40} In addition, the trial court properly determined Duane's extrajudicial statement was admissible pursuant to Evid.R. 804(B)(3). *Lynch*, ¶24. Duane's statement was contrary to his interest, and corroborating circumstances clearly indicated the statement's trustworthiness, since the details of the incident Duane described in his statement already had been outlined by the other witnesses to the incident.

{¶ 41} Appellant's third assignment of error, accordingly, is overruled.

{¶ 42} Appellant argues in his fourth assignment of error that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. This assignment of error also is overruled.

{¶ 43} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 44} On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *Jackson v. Virginia.*

{¶ 45} A review of the manifest weight of the evidence is subjected to a different standard. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal

and a remanding of the case for retrial." *State v. Greene*, Cuyahoga App. No. 91104, 2009-Ohio-850, ¶38, citing *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.

{¶ 46} The court in *State v. Martin* (1983), 20 Ohio App.3d 172 at 175, 485 N.E.2d 717, set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence as follows:

{¶ 47} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

{¶ 48} However, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶ 49} In this case, appellant's convictions are supported by both sufficient evidence and the manifest weight of the evidence. Both Reba and Powell identified appellant as the other gunman, and testified appellant aided Duane in committing the home invasion and the robbery of the men present in Shultz's apartment. Reba admitted that she received numerous text messages from Powell that day regarding his idea to "make some money,"

and that she drove Powell to the west side in his truck. Reba testified that Duane and appellant were already at the apartment building in another car and were waiting for them when they arrived.

{¶ 50} Reba testified that she, Duane, and appellant remained outside the building in Powell's truck, and she acknowledged Powell kept them informed by way of his text messages. In one of Powell's messages, he instructed them to focus on the man in the red shirt when they entered the apartment, because he held the money. Shultz testified he wore a red shirt that night.

{¶ 51} Powell testified that Duane and appellant both took part in the crimes committed; they both followed Powell into the building, and both entered Shultz's apartment behind him with guns drawn. Powell testified that both Duane and appellant gathered everyone's valuables before herding them into the kitchen area.

{¶ 52} Since Reba's and Powell's similar descriptions of the circumstances surrounding the incident were corroborated, not only by the testimony of Shultz and of the other two victims who appeared for trial, but also by Duane's statement, a reasonable juror could have found all the essential elements of the offenses were proved by the state. Thus, appellant's convictions were supported by sufficient evidence.

{¶ 53} Appellant's convictions also were supported by the manifest weight of the evidence. Although appellant's sister testified appellant was with her playing cards on the east side of town at the time the robbery was in progress, her credibility was undermined at critical points.

{¶ 54} On direct examination, appellant's sister gave the impression of possessing a good memory for telephone numbers, and she acknowledged she sent appellant text messages often. However, during cross-examination, she could not remember appellant's phone number. Moreover, when the records of the "956" number were shown to her, appellant's sister also could not explain why, in the days around the time of the robbery, she sent text messages to that number, because she asserted she did not know to whom it belonged.

{¶ 55} In light of the record, this court cannot find the jury lost its way in determining that appellant was the "other dude" with whom Duane committed the offenses that night. Consequently, appellant's fourth assignment of error also is overruled.

{¶ 56} Appellant argues in his fifth assignment of error that his trial counsel provided ineffective assistance in several respects. This court disagrees.

{¶ 57} In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, a defendant must show not only that the

attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive defendant of a fair and reliable trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 58} There are many ways to provide effective assistance in any given case, therefore, scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.; see, also, *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Counsel will not be deemed ineffective for failing to make futile motions. *State v. Leonard*, Cuyahoga App. No. 93496, 2010-Ohio-3601, ¶27.

{¶ 59} Appellant initially complains that trial counsel failed to object when Lynch described what each of the victims reported had been taken during the robbery. Appellant contends the testimony was inadmissible hearsay.

{¶ 60} In *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105, the court held that, under certain circumstances, out-of-court statements offered to explain a police officer's conduct during an investigation are admissible as non-hearsay evidence. Since the potential for abuse is great, however, the circumstances are limited. Id.

{¶ 61} Appellant is correct in asserting that Lynch's testimony in this regard was improper. Nevertheless, the error was harmless in light of the other, overwhelming evidence concerning the specifics of the robbery. *State v. Cochran*, Geauga App. No. 2006-G-2697, 2007-Ohio-345, ¶16.

{¶ 62} Shultz's testimony indicated each participant in the poker game brought approximately a thousand dollars, and that the robbers took all the money he held for the players. Gross and Foertch both testified the robbers took approximately two thousand dollars from them. Under these circumstances, defense counsel's omission cannot, by itself, be deemed ineffective assistance.

{¶ 63} Appellant also complains that defense counsel failed to object to Lynch's testimony that Duane's and Powell's versions of the incident were consistent. Appellant contends Lynch thus was improperly permitted to vouch for their credibility. However, in context, Lynch actually was explaining the reason he pursued charges against appellant as another perpetrator of the incident. *State v. Steward*, Cuyahoga App. No. 80993, 2003-Ohio-1337, ¶28. Counsel would have no reason to object to this testimony.

{¶ 64} A review of the record demonstrates appellant's trial counsel defended the case with vigor and thoroughness. Counsel simply was unsuccessful; he cannot be faulted for failing either to surmount the

overwhelming evidence of his client's guilt, or to challenge admissible evidence.

{¶ 65} Appellant's fifth assignment of error, accordingly, also is overruled.

{¶ 66} In his sixth assignment of error, appellant argues that the trial court wrongly imposed sentence on each of his convictions, because the court merged many of them pursuant to R.C. 2945.21(A). Appellant's contention is rejected.

{¶ 67} In *State v. Logan* (1979), 60 Ohio St.2d 126, 131, 397 N.E.2d 1345, the supreme court made the following observation:

{¶ 68} "It is apparent that * * * [R.C. 2941.25] has attempted to codify the judicial doctrine sometimes referred to as the doctrine of merger * * * which holds that 'a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' [Footnotes and citation omitted.]"

{¶ 69} The supreme court later noted:

{¶ 70} "Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the *determination of the defendant's guilt* for committing allied offenses *remains intact*, both before and after the merger of allied offenses for sentencing." *State v. Whitfield*, 124 Ohio St.3d 319,

2010-Ohio-2, 922 N.E.2d 182, paragraph three of the syllabus (emphasis added).

**{¶ 71}** The foregoing applies because Crim.R. 32(C) states in part that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the sentence." Moreover, in *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, the supreme court held that the requirements of Crim.R. 32(C) are jurisdictional and that absent compliance with Crim.R. 32(C), there can be no final, appealable order under R.C. 2505.02. Id. at syllabus. *Baker* adhered to long-standing precedent that a criminal action is not final for purposes of appeal until the trial court has separately disposed of each count in the indictment. *State v. Waters*, Cuyahoga App. No. 85691, 2005-Ohio-5137; *State v. Cooper*, Cuyahoga App. No. 84716, 2005-Ohio-754.

**{¶ 72}** With the foregoing in mind, this court stated in pertinent as follows in *State v. White*, Cuyahoga App. No. 92972, 2010-Ohio-2342, ¶61-62:

**{¶ 73}** " * * * Merger thus does not mean that no *sentence* is announced for the allied offense — that would violate Crim.R. 32(C). Instead, merger of sentences implies that *a sentence is announced for the allied offense but literally merged into another offense so that the defendant serves a single term.* This conclusion is consistent with the supreme court's finding that the imposition of a concurrent sentence for an allied offense causes prejudice

because it constitutes a second conviction in violation of R.C. 2941.25. See *State v. Underwood*, 2010-Ohio-1, at ¶31, [124 Ohio St.3d 365, 922 N.E.2d 923] (citations omitted).

**{¶ 74}** "When there has been a guilty finding on an allied offense, the sentencing judge must comply with Crim.R. 32(C) by announcing a sentence on all counts for which the defendant has been found guilty, including the allied offense. It must then allow the state to elect on which of the two allied offenses it wishes to proceed. The court must clearly note the election both in court at the time of sentencing and in its judgment of conviction. It must further state that the sentence on the non-elected count has been 'merged' into the elected count pursuant to R.C. 2941.25. By announcing a sentence for the allied offense, the court will comply with Crim.R. 32(C). By merging the sentence for the non-elected allied offense into the elected offense, the court will comply with R.C. 2941.25." (Emphasis added.)

**{¶ 75}** A review of the record in this case demonstrates the trial court fully complied with its duties as described in *White*. Since the trial court committed no error, appellant's sixth assignment of error also is overruled.

**{¶ 76}** Appellant's convictions and sentence are affirmed.

**{¶ 77}** It is ordered that appellee recover from appellant costs herein taxed.

**{¶ 78}** The court finds there were reasonable grounds for this appeal.

**{¶ 79}** It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., CONCURS
EILEEN A. GALLAGHER, J., DISSENTS
(SEE ATTACHED DISSENTING OPINION)
EILEEN A. GALLAGHER, J., DISSENTING:

**{¶ 80}** For the following reasons, I respectfully dissent from the majority opinion. Because I find that the trial court violated Smith's Sixth Amendment right of confrontation, and further, improperly sentenced Smith to a first-degree felony on all six counts of kidnapping when the verdict forms did not delineate the degree of felony, I would vacate Smith's convictions and sentence.

**{¶ 81}** In his third assigned error, Smith argues the trial court violated his Sixth Amendment right of confrontation when it allowed Detective Lynch to relate Duane Smith's out-of-court statement. I disagree with the majority opinion's conclusion that this assigned error lacks merit.

**{¶ 82}** Evid.R. 804 sets forth exceptions to the hearsay rule that apply when the declarant is unavailable:

(A) Definition of unavailability

'Unavailability as a witness' includes any of the following situations in which the declarant:

* * *

"(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; * * *

* * *

"(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means. A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

(B) Hearsay exceptions

**{¶ 83}** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.

(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement."

{¶ 84} In the present case, the state filed a motion in limine to call Duane Smith as an adverse or court witness. Smith opposed this motion and the trial court conducted an extensive hearing on the issue outside of the presence of the jury. Tr. 363-379, 485-501. After determining that the state's ability to call the witness hinged on whether Duane Smith would refuse to testify based on his Fifth Amendment right against self-incrimination, the court brought Duane Smith into the courtroom. The court advised Duane of his Fifth Amendment right not to testify and that his appellate counsel advised him to refuse to testify. Tr. 488. Nonetheless, Duane informed the court that he wanted to testify, that he wanted to help his cousin. Tr. 491. At the end of the hearing, the court denied the state's request to call Duane Smith.

{¶ 85} Later, during the direct examination of Detective Lynch, the state sought to admit Duane's out-of-court statement to Lynch, based on the unavailability of Duane Smith. Tr. 610. Specifically, the state sought to

admit the statement pursuant to Evid.R. 804(B)(3), a statement against party interest. Smith opposed the state's action. The trial court ultimately allowed Duane's out-of-court statement through the testimony of Detective Lynch.

{¶ 86} The Ohio Supreme Court has held that a two-part test determines whether admitting hearsay testimony of an unavailable witness violates the criminal defendant's right of confrontation. *State v. Blakely*, Lucas App. No. L-03-1275, 2006-Ohio-185, citing *State v. Smith* (1990), 49 Ohio St.3d 137, 144, 551 N.E.2d 190. First, the witness whose testimony is offered must be unavailable. Id. The second prong of the test requires the proffered statement to "bear sufficient indicia of reliability." Id., citing *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

{¶ 87} The first prong of the test is a rule of necessity. *State v. Keairns* (1984), 9 Ohio St.3d 228, 230, 460 N.E.2d 245. Generally, this requires a showing that the declarant is unavailable to testify. Id., citing *Roberts*. A witness is not considered unavailable unless the prosecution has made reasonable efforts in good faith to secure his presence at trial. Id., citing *Barber v. Page* (1968), 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed. 2d 255; *Roberts*. This reflects the preference for face-to-face confrontation, which allows demeanor to be observed and the import of the testimony to be more readily comprehended. Id. The proponent of the evidence has the burden of

establishing that such efforts have been made. See *Keairns*, citing *Roberts*; *State v. Madison* (1980), 64 Ohio St.2d 322, 327, 415 N.E.2d 272. Furthermore, the evidence of unavailability "must be based on the personal knowledge of witnesses rather than upon hearsay not under oath, at least when unavailability has not been clearly conceded by defendant." *Keairns*, quoting *Smith*. See, also, *State v. Workman*, 171 Ohio App.3d 89, 2007-Ohio-1360, 869 N.E.2d 713.

{¶ 88} Regarding the first prong of the test, the record reveals that Duane Smith was available and willing to testify at all times. Accordingly, although the trial court attempted to deem him "unavailable" based on a prior defense objection, Duane Smith was actually present and available to take the witness stand. The law requires us to go no further in our analysis. Duane Smith was present and willing to waive his Fifth Amendment right against self incrimination and therefore, he cannot be deemed unavailable for purposes of Evid.R. 804(B)(3).

{¶ 89} Thus, I would conclude that the record in the present case is insufficient to establish the showing of unavailability required by Evid.R. 804 or the Confrontation Clause. See *Keairns*; *Workman*. Furthermore, I do not find the trial court's attempt to deem Duane Smith unavailable overcomes the fact that Duane Smith was in fact present and willing to testify. Because the state did not meet the first prong of the two-part test set forth in *Smith*, it is

not necessary for us to address the second prong of the test requiring the proffered statement to "bear sufficient indicia of reliability." I would therefore sustain Smith's third assignment of error.

{¶ 90} Moreover, although I do not find the error sufficient enough to warrant reversal, I do find problematic the court's refusal to grant a continuance or a mistrial after the state revealed the inaccurate phone records to the defense and the court. The crux of the state's case was the phone records between the various defendants, which they had in their possession from December 2009. Although the error addressed in assignments of error one and two was not discovered until the middle of trial, Smith's counsel was not even given an opportunity to research the phone records before trial commenced. The state handed over the records during trial and the defense did the best it could under the limited time constraints. Knowing all these facts, I believe that the trial court erred in not granting, at a minimum, a continuance to allow Smith's counsel more time to review the records.

{¶ 91} Lastly, Smith's sentence on Counts 8 through 13 for kidnapping, a felony of the first degree, do not comport with the Ohio Supreme Court's rule announced in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735. In *Pelfrey*, the Supreme Court held that "a verdict form signed by a jury must include either the degree of the offense of which the defendant

is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at syllabus.

{¶ 92} In the present case, the verdict forms on the charges of kidnapping do not include either the degree of the felony or a statement that an aggravating element has been found. Accordingly, the remedy according to *Pelfrey* is that Smith can only be convicted of the least degree of the offense charged. Id.

{¶ 93} Pursuant to R.C. 2905.01(C), kidnapping is an aggravated felony of the first degree; however, if the offender releases the victim in a safe place unharmed, kidnapping is an aggravated felony of the second degree. Accordingly, based on the holding of *Pelfrey*, the maximum charge Smith could be convicted and sentenced on is a second-degree felony kidnapping charge. Smith must be resentenced on counts eight through thirteen.

{¶ 94} Based on the foregoing, I would reverse Smith's conviction and vacate the judgment entry of sentence of the court of common pleas. I would then remand the matter for proceedings consistent with this dissent.